ORDERED.

Dated: April 14, 2022

_____
Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 8:21-bk-04085-MGW |
| | Chapter 7 |
| Casey Todd Jenkins and | |
| Tonia Lynn Jenkins, | |
|     Debtors. | |
| _____/ | |
| Edwards Moving & Rigging, Inc. | Adv. No. 8:21-ap-00316-MGW |
|     Plaintiff, | |
| v. | |
| Casey Todd Jenkins, | |
|     Defendant. | |
| _____/ | |

**MEMORANDUM OPINION AND ORDER
<u>DENYING MOTIONS FOR SUMMARY JUDGMENT</u>**

A claim that a debtor intentionally violated a noncompete agreement ordinarily is insufficient to support a finding of a "willful and malicious injury" under section 523(a)(6). Here, not only did a district court find that Casey Jenkins, a

co-Debtor in this chapter 7 case, violated his noncompete agreement with Edwards Moving & Rigging, Inc., but it also found that Jenkins may have attempted to conceal his violation by erasing his Edwards-issued smartphone. And the district court held him in contempt for violating a preliminary injunction it issued. Largely on those facts, which are entitled to preclusive effect, Edwards claims the debt Jenkins owes it is nondischargeable as matter of law under Bankruptcy Code § 523(a)(6).

It is true that some courts have found that a debtor's efforts to conceal a breach of a noncompete agreement or debtor's violation of an injunction are enough to push a breach of a noncompete agreement claim over the "willful and malicious injury" hurdle. But, here, there is evidence that militates against finding that Jenkins intended to cause injury to Edwards or that he intentionally committed an act that was substantially certain to cause Edwards harm: Jenkins left his job with Edwards for personal reasons; he told the company he was leaving and who he was going to work for; and when he left, he did not attempt to steal any Edwards customers or employees or take any Edwards documents or information. Because those facts create a genuine issue of material fact whether Jenkins intended to injure Edwards, or whether he intentionally committed an act that was substantially certain to injure Edwards, Edwards is not entitled to judgment as a matter of law on its § 523(a)(6) claim.

I.  **Undisputed Facts**[1]

Debtor Casey Jenkins is a salesman by trade.[2] In August 2016, he convinced his sister-in-law, an executive vice president at Edwards Moving & Rigging, to help him get a job with the company.[3] Even though Jenkins' previous sales experience was with paper products and janitorial supplies, Edwards, which is in the heavy hauling, lifting, and rigging business, hired him as a regional sales manager.[4]

Because Jenkins had no experience in the heavy hauling, lifting, and rigging industry, Edwards had to provide Jenkins substantial training.[5] That training included safety training; utility safety and on-site training; estimator training; specifications and capabilities of equipment; pricing; permitting requirements; and route surveys, including bridge and utility constraints, the need for bucket trucks, and law enforcement and traffic control.[6] On average, it takes an inexperienced

---

[1] The undisputed facts come from factual findings made by United States District Judge Charlene Edwards Honeywell following a bench trial on Edwards' breach of contract action against Jenkins in district court. Adv. Doc. No. 8-1. Those findings are attached as Exhibit A to Edwards' summary judgment motion. *Id.* Jenkins admits Judge Honeywell's factual findings as true. Adv. Doc. No. 10 at 2.

[2] Adv. Doc. No. 8-1, ¶¶ 4 – 5.

[3] *Id.* at ¶ 5.

[4] *Id.* at ¶¶ 4 – 5.

[5] *Id.* at ¶¶ 5 – 6.

[6] *Id.* at ¶ 6.

salesperson two to three years of that type of training to become an effective salesperson for Edwards.[7]

Jenkins worked for Edwards for two and a half years.[8] But the job, which required significant travel (sometimes requiring him to be away from home for months at a time), was hard on his family.[9] More than two years in, Jenkins, the primary income earner in his family, told Edwards' management that he was considering resigning because of the problems the travel was causing.[10] Although Edwards tried to accommodate Jenkins by hiring a project manager to help him, the situation did not improve.[11] So, in April 2019, Jenkins gave Edwards two weeks' notice and told the company he was going to work for Sims Crane & Equipment Co.,[12] which held itself out as being "engaged in the crane and equipment rental and rigging business."[13]

Edwards advised Jenkins that working for Sims would violate the non-compete agreement he signed as a condition of his employment with Edwards.[14]

---

[7] *Id.* at ¶¶ 5 – 6.

[8] *Id.* at ¶ 9.

[9] *Id.* at ¶ 10.

[10] *Id.* at ¶¶ 10 – 11.

[11] *Id.* at ¶ 11.

[12] *Id.* at ¶ 13.

[13] *Id.* at ¶ 21.

[14] *Id.* at ¶¶ 8 – 13.

That noncompete agreement prohibited Jenkins from (among other things) going to work for a competitor of Edwards for two years following his employment with the company.[15] Edwards gave Jenkins the option of remaining with the company until he could find a job somewhere other than at Sims.[16] Jenkins, however, was determined to leave, even if that meant risking getting sued by Edwards.[17]

Although Jenkins went to work for Sims as a "project lead" in April 2019,[18] he did not retain Edwards' estimator tool or any of the company's documents or data.[19] Nor did he make any effort to solicit (i) any Edwards employee to leave the company; or (ii) any customer with whom he interacted while at Edwards to do business with Sims.[20] And no one from Sims asked him to provide information about Edwards' business or its customers, or whether he had any documents or information from Edwards to share.[21]

Even so, Edwards sued Jenkins in federal court for breach of contract. Initially, the district court entered a limited preliminary injunction that allowed

---

[15] *Id.* at ¶ 8.

[16] *Id.* at ¶ 13.

[17] *Id.*

[18] *Id.* at ¶ 15.

[19] *Id.* at ¶ 22.

[20] *Id.*

[21] *Id.*

Jenkins to continue working for Sims.[22] But it appears that limited injunction was based on affidavits (submitted by Jenkins and Sims) that did not disclose to the district court the full scope of services that Sims rendered or the full scope of Jenkins' job duties.[23] Ultimately, after a bench trial on the merits of Edwards' claims, the district court found Jenkins had breached his noncompete agreement with Edwards.[24]

The district court also found that Edwards was harmed by Jenkins' breach. In particular, the court found that Edwards lost all the time and "know-how" that it had invested into Jenkins.[25] And because of the void caused by Jenkins' departure, other regional sales personnel of Edwards were forced to devote their efforts to managing projects that Jenkins either quoted or "still had on the books."[26] Eventually, Edwards had to relocate and train an employee to replace Jenkins. The district court concluded the harm suffered by Edwards was incalculable.[27]

So the district court enjoined Jenkins from working for, providing services to, or acting in concert with Sims through May 21, 2022.[28] The district court also ruled

---

[22] *Id.* at ¶¶ .

[23] *Id.* at ¶¶ 48 – 55.

[24] *Id.* at ¶¶ 77 – 80.

[25] *Id.* at ¶ 82.

[26] *Id.* at ¶¶ 17 & 82.

[27] *Id.* at ¶ 83.

[28] *Id.* at p. 50 – 51.

that Jenkins was liable to Edward for the reasonable attorney's fees and costs it incurred in prosecuting its breach of contract claim.[29] It appears the Debtor was later held in contempt for violating the district court's preliminary injunction.[30]

Then, on August 3, 2021, a magistrate judge recommended that a final judgment (for attorney's fees and costs) be entered against Jenkins in the amount of $382,968.12.[31] Days after the magistrate judge's recommendation, Jenkins and his wife filed for bankruptcy.

On Schedule E/F, Jenkins and his wife scheduled a $410,000 debt owed to Edwards for breach of Jenkins' noncompete. Edwards filed this adversary proceeding to have that debt determined to be nondischargeable under Bankruptcy Code § 523(a)(6). Edwards now asks the Court to determine that the debt is nondischargeable under § 523(a)(6) as a matter of law.[32]

## II. Conclusions of Law

Bankruptcy Code § 523(a)(6) excepts from the chapter 7 discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."[33] An injury is malicious if it is "wrongful and without just cause or

---

[29] *Id.* at p. 51.

[30] Adv. Doc. No. 8, ¶¶ 13 – 14 & 97.

[31] Adv. Doc. No. 1-2.

[32] Adv. Doc. No. 8.

[33] 11 U.S.C. § 523(a)(6).

7

excessive even in the absence of personal hatred, spite or ill will."[34] An injury is willful if the debtor "commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury."[35] According to Edwards, courts have routinely found that a deliberate breach of a restrictive covenant constitutes a willful and malicious injury, particularly when the debtor has attempted to conceal the breach or evade a preliminary injunction.[36]

In support of that proposition, Edwards relies on a bankruptcy court decision twelve years ago out of the Western District of Louisiana: *In re O'Connor*.[37] In that case, the debtor worked for Lake Area Supply.[38] His employment was subject to a noncompete agreement that prohibited him from engaging in drywall insulation, estimating, installing insulation, painting, and related activities, as well as soliciting Lake Area Supply customers. Three years into his job, the debtor left and started a competing drywall and painting business, soliciting Lake Area Supply customers in the process.[39]

---

[34] *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012).

[35] *Id.*

[36] Adv. Doc. No. 8 at 6 – 7.

[37] *Id*. at 7 (citing *O'Connor v. Trost (In re O'Connor)*, 2010 WL 390726 (Bankr. W.D. La. Oct. 10, 2010)).

[38] *In re O'Connor*, 2010 WL 390726, at *1.

[39] *Id.*

Lake Area Supply sued the debtor in state court and obtained a preliminary injunction, which the debtor violated by continuing to operate his competing business.[40] The state court found the debtor in contempt for violating the injunction and sentenced him to twelve months' imprisonment.[41] To circumvent the injunction, the debtor purported to transfer his interest in the competing business and, using his brother as a "front," continued to operate the business.[42] Ultimately, the state court awarded Lake Area Supply $470,000 in damages and $46,385.73 in attorney's fees. When the debtor filed for bankruptcy, Lake Area Supply sought to have the amount owed to it determined to be nondischargeable under § 523(a)(6).

At the outset, the *O'Connor* court noted that "[a] claim that a debtor intentionally violated a covenant not to compete is generally not sufficient to support a finding of a "willful and malicious injury" under section 523(a)(6)."[43] That was true even though the state court found the debtor intentionally violated his noncompete agreement:

> While the state court specifically found that Donald O'Connor acted intentionally when he breached the covenant not to compete, a finding of intent alone does not support a finding of willful and malicious conduct.[44]

---

[40] *Id.*

[41] *Id.*

[42] *Id.* at * 1 – 2.

[43] *Id.* at *6.

[44] *Id.*

Still, the court ultimately ruled that the other findings by the state court supported a finding by the bankruptcy court that debtor's breach of his noncompete agreement constituted a willful and malicious injury under § 523(a)(6).

Specifically, the state court found that after leaving Lake Area Supply, the debtor violated his noncompete agreement by setting up a competing business and soliciting Lake Area Supply customers; the debtor continued to violate his noncompete agreement even after the state court entered a preliminary injunction; the state court held the debtor in contempt for violating the noncompete agreement; after being held in contempt, the debtor still continued to compete; and the debtor tried to conceal his effort to compete (after being held in contempt) by purporting to transfer his competing business to his brother and using his brother as a "front."[45]

In many respects, this case is similar to *O'Connor*. Like in *O'Connor*, Jenkins appears to have been held in contempt for violating the district court's preliminary injunction.[46] Also like in *O'Connor*, there is some record evidence here that Jenkins tried to conceal his efforts to violate his noncompete agreement: Jenkins initiated a "factory reset" of his Edwards-issued smartphone before returning the device to Edwards.[47] But, in other significant respects, this case is distinguishable from *O'Connor*.

---

[45] *Id.* at 6 – 7.

[46] Adv. Doc. No. 8, ¶¶ 13 – 14.

[47] Adv. Doc. No. 8-1, ¶ 15.

Start with the fact that this case is distinguishable from *O'Connor* procedurally. *O'Connor* was decided after a trial on the merits; here, Sims is asking this Court to determine nondischargeability as a matter of law at summary judgment. What's more, the case is distinguishable factually.

To begin, unlike in *O'Connor*, here there are facts that militate against a finding of a "willful and malicious" injury. For one thing, Jenkins left Edwards because of the strain the work-related travel was placing on his family. For another, it appears that when Jenkins left Edwards, he did not retain Edwards' estimator tool or any of the company's documents or data. Nor did he make any effort to solicit any Edwards customers with whom he interacted or any Edwards employees. And no one from Sims appears to have asked him to provide information about Edwards' business or its customers. Also, while it is true Jenkins reset his smartphone, which could be viewed as an attempt to conceal his breach of the noncompete agreement, Jenkins was also up front with Edwards about the fact that he was going to work for Sims.

Edwards has an answer to each of these facts. As for the fact that Jenkins did not retain Edwards' tools or documents, or steal its customers or employees, Edwards says "so what?" It is already established that Jenkins did some bad things (e.g., go to work for a competitor and violate a preliminary injunction); so it's irrelevant that he didn't do other bad things (e.g., steal customers or employees). As for the fact that Jenkins told Edwards he was going to work for Sims, that doesn't absolve him from blame for resetting his phone, Edwards says, because the phone could have contained all kinds of damaging admissions.

11

For the most part, this argument misses the mark. It is true that whether Jenkins stole customers or employees, for example, may be irrelevant to whether he breached his noncompete agreement. But the issue for this Court, when considering Edwards' § 523(a)(6) claim, is not whether he breached his noncompete agreement—even intentionally. The issue is whether Jenkins "commit[ted] an intentional act the purpose of which [was] to cause injury or which [was] substantially certain to cause injury" to Edwards.[48] Whether Jenkins stole customers or clients is relevant to determine—and creates a genuine issue of material fact as to—whether he intended to cause Edwards injury or whether he committed an intentional act that was substantially certain to injure Edwards.

### III. Conclusion

The district court's factual findings, which the parties agree are entitled to preclusive effect, establish that Jenkins violated his noncompete agreement with Edwards. But those facts, standing alone, do not establish that Jenkins' violation of the noncompete agreement constitutes a willful and malicious injury under § 523(a)(6) as a matter of law. Accordingly, it is

**ORDERED**:

1. Edwards Moving & Rigging, Inc.'s motion for summary judgment[49] is DENIED.

---

[48] *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012).

[49] Adv. Doc. No. 8.

2. Casey T. Jenkins' cross-motion for summary judgment[50] is DENIED.

---

Attorney Peter F. Zooberg is directed to serve a copy of this Memorandum Opinion and Order on all interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of the Memorandum Opinion and Order.

---

**Peter F. Zooberg, Esq.**
**Zooberg Law Firm, P.A.**
   *Counsel for Casey T. Jenkins*

**Brett Preston, Esq.**
**Patrick M. Mosley, Esq.**
**Hill Ward Henderson**
   *Counsel for Edwards Moving & Rigging, Inc.*

---

[50] Adv. Doc. No. 10.